**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **DANIEL T.[1]**, | Case No. 3:22-cv-1479-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MARTIN O'MALLEY**, Commissioner of Social Security, | |
| Defendant. | |

Betsy R. Shepherd, ATTORNEY AT LAW, 425 Riverwalk Manor Drive, Dallas, GA 30132. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; and Julie A.K. Cummings, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Daniel T. seeks review of the final decision of the Commissioner of the Social

Security Administration (Commissioner) denying Plaintiff's application for Disability Insurance

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (Act). For the following reasons, the Court reverses the Commissioner's decision and remands this case for further proceedings.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB and SSI on September 18, 2019, initially alleging disability beginning April 15, 2015. AR 286, 288.[2] Plaintiff's date of birth is August 11, 1984, and he was 30 years old on the alleged onset date (AOD) of disability. AR 286, 288. The agency initially denied Plaintiff's application on March 6, 2020, and again on reconsideration on August 11, 2020. AR 151, 152, 153, 155. Plaintiff then requested a hearing before an ALJ, which was held on February 24, 2021. AR 34, 222. During the hearing, Plaintiff amended his AOD to August 31, 2017, meaning Plaintiff was 33 years old as of his amended AOD.[3] AR 40-41. On June 25, 2021, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 17-28. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff now seeks review.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

---

[2] Plaintiff's application for DIB, AR 286, states that he applied for DIB on September 20, 2019. The ALJ's opinion and other agency disability determinations in the record, however, state that Plaintiff applied for both DIB and SSI on September 18, 2019, and any discrepancy in the record is immaterial to the Court's determination.

[3] Plaintiff previously had applied for benefits on July 14, 2015, and was found to be not disabled by a different ALJ in a decision dated August 30, 2017. AR 97. The ALJ in the present case declined to apply the presumption of nondisability arising from the conclusion of the prior ALJ, finding the presumption had been rebutted. AR 17. Therefore, no res judicata effect applied to the period between the last ALJ decision and the present ALJ decision. *Id.*

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

## C.  The ALJ's Decision

As a preliminary matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insurance requirements of the Social Security Act through December 31, 2020. AR 20. Thus, for

his DIB claim, Plaintiff needed to establish disability—for a period of twelve months or longer—on or before that date. The ALJ then engaged in the sequential analysis.

At step one of the analysis the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the AOD of August 31, 2017. *Id*. At step two, the ALJ found that Plaintiff had the following medically severe impairments: dermographism and schizoaffective disorder (depressive type). *Id*. At step three, the ALJ determined that none of these impairments met or equaled the severity of any impairment listed in 20 C.F.R part 404, subpart P, Appendix 1. AR 21. Next, the ALJ determined Plaintiff's RFC and found that he could perform the full range of work at all exertional levels, but with the following nonexertional limitations:

> [He] can perform simple, routine tasks that can be learned in three to six months; [he] can have occasional, brief, and specific[4] contact with coworkers; and, [he] should have no exposure to direct sunlight and extreme heat.

AR 22.

Comparing Plaintiff's RFC to his past work, at step four, the ALJ found that Plaintiff could perform his past relevant work as a warehouse worker. AR 26. The ALJ then made an alternative step five finding that other jobs exist in the national economy that Plaintiff could perform, including industrial cleaner, hand packager, production assembly, cannery worker, and warehouse checker. AR 27. Thus, the ALJ determined Plaintiff was not under a disability, as defined by the Act, at any time from August 31, 2017, through the date of the decision. AR 28.

---

[4] The Commissioner noted that "specific" appears to be a scrivener's error for "superficial." The Court agrees, and finds that this scrivener's error is harmless, as it is inconsequential to the disability determination.

**DISCUSSION**

Plaintiff contends the ALJ erred by: (A) improperly rejecting Plaintiff's symptom testimony; (B) improperly rejecting the lay witness testimony of Plaintiff's mother; and (C) failing to set out all limitations in the hypothetical to the vocational expert (VE).

**A.  Symptom Testimony**

**1.  Applicable Law**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[5] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

---

[5] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Analysis

Plaintiff testified that severe, ongoing mental health issues, and side effects from mental health medications prevent him from working. AR 43-44. At his hearing, Plaintiff stated that he has anxiety, anger, and "a lot of paranoia." AR 44. Auditory hallucinations, a symptom of Plaintiff's schizoaffective disorder, are triggered by stress. AR 51. Consequently, Plaintiff stated that he avoids stressful situations by "stay[ing] home as much as possible." AR 52. Plaintiff testified that his medications cause fatigue, anxiety, and weight gain. *Id.* Plaintiff testified that he has gained around 200 pounds since leaving his last job in 2015, and that excessive weight gain causes shortness of breath with any level of physical exertion. AR 53.

The ALJ stated that Plaintiff's allegations of debilitating symptoms are "not entirely consistent with the evidence." AR 25. Specifically, the ALJ discounted Plaintiff's symptom testimony because (1) his activities of daily living were not limited to the extent expected; (2) treatment had been generally successful in controlling symptoms; and (3) physical and mental status exams were generally normal. *Id.*

#### a. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can

support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ discounted Plaintiff's symptoms because his "daily activities were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 25. Specifically, the ALJ noted that Plaintiff can "perform most of his activities of daily living without significant difficulty including making videos,[6] playing computer games with

---

[6] The Court assumes the ALJ's reference to "making videos" is a scrivener's error for "watching videos." Plaintiff testified to watching television and researching online but did not testify as to making videos. AR 46.

friends, cooking, shopping, completing chores, driving his mother to the grocery store, and spending time online daily." AR 24 (footnote added). The Ninth Circuit repeatedly has warned that these types of minimal activities alone are not enough generally to discount a plaintiff's testimony. They may, however, discount a plaintiff's testimony if they are inconsistent with a specific aspect of a plaintiff's claimed limitations, such as playing video games for hours while claiming an inability to concentrate for more than 30 minutes. The ALJ, however, must "identif[y] *which* testimony she found not credible," and "explain[] *which* evidence contradicted that testimony." *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphases in original). The ALJ never connected those dots, and thus erred. *See, e.g.*, *Munoz v. O'Malley*, 2024 WL 1218541, at *10 (E.D. Cal. Mar. 21, 2024) ("Because the ALJ merely summarized Plaintiff's activities, but failed to link them to any specific testimony, this is not a specific, clear and convincing reason to discount Plaintiff's subjective complaints."); *Blount v. Kijakazi*, 2023 WL 4852331, at *7 (S.D. Cal. July 27, 2023) (rejecting daily living activities as a reason to discount a plaintiff's testimony because "[t]he ALJ did not identify the specific subjective symptom testimony that these activities undermine nor explain how the ability to perform the activities contradict the specific testimony").

The Court is left to guess as to what limitations or testimony conflict with Plaintiff's identified activities. Ninth Circuit decisions, however, "make clear" that courts "may not take a general finding [of] an unspecified conflict" and then "comb the administrative record to find specific conflicts." *See Brown-Hunter*, 806 F.3d at 494.

Additionally, Plaintiff testified that stress exacerbates his symptoms, and he goes out of his way to avoid stressful situations, including staying home as much as possible. AR 52. Plaintiff also testified that, at most, he spends an hour a week on household errands and chores.

AR 47-48. The rest of his time is spent at home, online "researching or watching [videos]." AR 46. Further, Plaintiff's records indicate he avoids people and believes that people are "out to get him." AR 850. That Plaintiff can complete basic household chores, play video games, and use the computer does not mean Plaintiff could successfully transition those activities into full-time employment. Thus, without more, the ALJ's reliance on these activities to discount Plaintiff's symptom testimony is not a clear and convincing reason to reject Plaintiff's symptom testimony. *See Garrison*, 759 F.3d at 1016 (daily activities that are consistent with statements about impairments do not satisfy the clear and convincing reasons to discredit a Plaintiff's symptom testimony); *see also id.* at 1017 (stating that a court must also consider "that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace").

The ALJ further discounted Plaintiff's testimony for having discontinued Vocational Rehabilitation (VR) services because "he was no longer interested in working, as his mother's income was enough to sustain him, and he wanted to focus on his mental health." AR 24 (citing AR 403[7]). The ALJ does not explain how Plaintiff's failure to engage with VR services is inconsistent with his testimony. Indeed, Plaintiff's statement that he does not believe he is ready to work at this time and would like to only focus on his mental health is entirely consistent with the record. AR 403. According to the record, Plaintiff never meaningfully engaged with VR services as there are only three files in Plaintiff's VR record: (1) the application dated June 15,

---

[7] The ALJ cited exhibits B13F/14 and B16F/14. Exhibit B16F/14 (AR 1264) appears to be a scrivener's error for B16E/14 (AR 403). Exhibit B13F/14 (AR 1191), however, does not support the ALJ's contention or even address this subject. It appears to be an erroneous citation. In the previous citation the ALJ miscited B13F exhibits when meaning to cite B12F exhibits relating to Plaintiff's mental status examinations. But B12F/14 also does not relate to Plaintiff's experience at Vocational Rehabilitation services. The Court could not reasonably discern the ALJ's intended second support for this contention. Thus, the Court considers only AR 403.

2017 (AR 390-96); (2) the eligibility determination, dated August 11, 2017 (AR 397-401); and

(3) the file closure, showing Plaintiff chose to discontinue services on January 24, 2019

(AR 402-04). The lack of engagement with VR services in consistent with Plaintiff's testimony

that he rarely leaves his house and limits his exposure to potential stressors. Without further

explanation, the Court cannot conclude that Plaintiff's decision to withdraw from VR services is

a clear and convincing reason to discount his testimony.

### b.  Effective Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and

persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "[E]vidence of

medical treatment successfully relieving symptoms can undermine a claim of disability."

*Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc.*

*Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled

effectively with medication are not disabling for the purpose of determining eligibility for SSI

benefits."). "Reports of 'improvement' in the context of mental health issues must be interpreted

with an understanding of the patient's overall well-being and the nature of her symptoms.

*Garrison*, 759 F.3d at 1017. "The fact that a person suffering from depression makes some

improvement does not mean that the person's impairment no longer seriously affects his ability

to function in a workplace." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (cleaned

up).

As the Ninth Circuit explained in *Garrison*,

> It is error to reject a claimant's testimony merely because
> symptoms wax and wane in the course of treatment. Cycles of
> improvement and debilitating symptoms are a common occurrence,
> and in such circumstances it is error for an ALJ to pick out a few
> isolated instances of improvement over a period of months or years
> and to treat them as a basis for concluding a claimant is capable of
> working.

*Garrison*, 759 F.3d at 1017.

The ALJ stated that treatment of Plaintiff's allegedly disabling symptoms had been "generally successful in controlling those symptoms." AR 25. The ALJ pointed out that medical records show that Plaintiff "reported a good response to medications." AR 24. For example, during a January 9, 2018 psychological assessment, Plaintiff reported an increase in auditory hallucinations "only at night," and attributed the change to an increase in stress, due to having to care for his mother after she broke her leg. AR 434. Plaintiff, however, told his provider that his "mood is good" and his medications were "beneficial." *Id*. Plaintiff requested his medication regimen remain unchanged at that time. *Id*. In October 2019, Plaintiff again reported that his current medications were helping his schizophrenia, although he reported experiencing significant depression, and he requested no changes to his medication at that time. AR 701-02. In November 2020, Plaintiff reported that his auditory hallucinations were "no longer a problem" but suggested that depression was his biggest stressor. AR 1259.

The ALJ, however, failed to consider the degree to which Plaintiff's limited exposure to environmental stressors precipitated his symptom improvements, and whether those improvements would thus translate into Plaintiff's ability function in the workplace. *Ghanim*, 763 F.3d at 1162; *see also Garrison*, 759 F.3d at 1017 (stating that reports of improvement must be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace). Notably, Plaintiff reported that he stays home "as much as possible" to avoid stressful situations, and only goes out one to two times a week. AR 52, 368. The ALJ did not consider how Plaintiff's limited environment contributed to his symptom improvements, nor did the ALJ consider how a transition to the workplace might affect those

improvements. The ALJ must, therefore, consider how Plaintiff's improved symptoms would translate into full-time work, given the limited environment he has functioned within during treatment.

### c. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ rejected Plaintiff's symptom testimony because "the medical evidence of record does not support" that he is unable to work due to his mental health. AR 24. The ALJ stated that Plaintiff generally presented as "alert and cooperative, with normal mood and affect, proper orientation, normal speech, and fair insight and judgment suggesting that treatment was at least

somewhat effective in stabilizing mood." *Id.* In support of this conclusion, the ALJ cited

AR 449-50, 1021, 1026, 1143,[8] 1148, 1158, 1163, 1168, 1173.[9]

The cited records show mixed results. A September 2017 appointment for schizophrenia

medication management lists Plaintiff as alert and oriented to person, place, and time, with

normal mood and affect, and normal behavior, but that he exhibited nervous/anxious behavior.

AR 1020-21. A July 2018 appointment for "lab work requested by psych" records Plaintiff as

alert and oriented to person, place, and time, with normal mood and affect, and normal behavior.

AR 1026. A mental status exam from April 2019 indicates that Plaintiff had normal speech, fair

general knowledge, insight, and judgment, and orientation within normal limits, but also

describes that Plaintiff exhibited anxious mood, blunted affect, poor self-image, auditory

hallucinations, and remote memory impairment. AR 449-50. Of the six cited mental status exams

from Clatsop Behavioral Healthcare, Plaintiff's mood is reported as down, better, good (twice),

and anxious (twice). AR 1143, 1148, 1158, 1163, 1168, 1173. In every report his fund of

knowledge is below average, his is listed as having poor self-image, his judgment and insight is

only fair, and he is reported as having some auditory hallucinations. *Id.* His affect was congruent

and blunted sometimes and congruent, open, and cooperative other times. *Id.* He was

consistently listed with logical coherence, clear and normal speech, good memory, linear and

---

[8] The ALJ cited exhibits B13F/31, 36, 46, 51, 56, 61. As previously noted, however, the ALJ erroneously cited B13F exhibits instead of B12F exhibits for this particular contention. Because the Court can reasonably discern the ALJ's path in identifying the supporting documents, the Court considers the cited B13F exhibits as cited to B12F. "Even when an agency explains its decision with less than ideal clarity, [the reviewing court] must uphold it if the agency's path may reasonably be discerned." *Cf. Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted).

[9] The ALJ also cited exhibits B2F 29-30 (AR 756-57), but these are duplicates of B1F/38-39 (AR 449-50). Accordingly, the Court disregards the citations to exhibit B2F.

goal directed thought processes, and good attention and concentration. *Id.* These were the *best* records, cited by the ALJ, to support the ALJ's contention that Plaintiff had normal mental status exams and that the objective medical evidence did not support Plaintiff's claimed limitations.

During Plaintiff's visits to Clatsop Behavioral Healthcare, however, Plaintiff also reported problems. For example, in his October 1, 2019 visit, he first reported depression, at a level of seven out of 10, causing him to lose interest in even movies and video games. AR 1141. He was reluctant to try an antidepressant medication because of side effects he had seen with other people. AR 1142. At his next follow up he reported continued depression at a level seven and agreed to try Prozac. AR 1146, 1148. At his next visit, on December 18, 2019, he reported stopping Prozac due to side effects, and that he would not try another antidepressant because of side effects. AR 1151. He reported depression with effects of "low mood, [decreased] appetite, low energy, loss of interest in movies and video games, feeling distracted, mind wanders, psychomotor retardation)." *Id.* In his June 18, 2020 visit, he reported ongoing depression, and that his auditory hallucinations included the gunshot from his past trauma, plus eye twitching, rocking back and forth, moving his feet a lot and "shuffling," and uncontrollably moving his tongue around his mouth. AR 1162. At his October 14, 2020 appointment, he reported depression, continued auditory hallucinations, anhedonia, insomnia, and indecisiveness. AR 1166-67.

That Plaintiff had some normal objective characteristics at some medical appointments does not negate his testimony of experiencing increased anxiety, paranoia, and hallucinations during periods of elevated stress. Moreover, normal objective findings alone are insufficient on their own to discredit Plaintiff's testimony.

**B.  Lay Witness Testimony**

    **1.  Standards**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment and "must give reasons that are germane to each witness." *Id.* (quoting *Dodrill*, 12 F.3d at 919). In rejecting lay testimony, however, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

The Commissioner argues that under new regulations governing the evaluation of *medical* evidence, an ALJ need not provide any reason for rejecting *lay* witness statements. Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in

this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for

evaluating medical opinion evidence. *Id.* § 404.1520c(a)-(c). Thus, under the new regulations,

the ALJ is not required to use the standards for evaluating medical opinion evidence when

evaluating lay witness testimony.

The Ninth Circuit has not yet decided whether the new regulations affect the requirement

in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony.

Some courts have concluded that the new regulations may dispense with an ALJ's obligation

specifically to address lay witness testimony, including any obligation to articulate germane

reasons for disregarding lay testimony. *See, e.g.*, *Evans v. Comm'r of Soc. Sec.*, 2023

WL 3570083, at *9 (E.D. Cal. May 19, 2023) ("Under the new regulations regarding nonmedical

statements, the Commissioner is no longer required to articulate 'germane' reasons for

discounting a lay witness's testimony."). The majority of district courts in this circuit, however,

conclude that the new regulations have not eliminated an ALJ's obligation to consider and

address lay witness testimony. *See, e.g.*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, 2023

WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, 2023

WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, 2023

WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi*, 2023 WL 5611408, at *5

(C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi*, 2023 WL 246391, at *8 (D. Idaho Jan. 18,

2023).

On the Court's reading, the new regulations do not eliminate an ALJ's obligation to

consider and address lay witness testimony. The revised regulations describe how to evaluate

*medical* opinion testimony. The fact that the regulations state that nonmedical opinion testimony

*is not held* to the same standard as medical opinion testimony says nothing about the standard to

PAGE 18 – OPINION AND ORDER

which nonmedical opinion testimony *is held*. Thus, the new regulations are not "clearly irreconcilable" with existing caselaw and are insufficient to overrule binding Ninth Circuit precedent that an ALJ must comment on lay witness testimony and provide germane reasons to discount it. *See Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022) ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations." (cleaned up)). Further, "[t]he requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment." *Joseph L.S.*, 2023 WL 5611408, at *5. (citing 20 C.F.R. §§ 416.913(a), 416.929(a)).[10] The Ninth Circuit's requirement from the line of cases described above that an ALJ must provide germane reasons to discount lay witness testimony finds support in this regulatory requirement, which still remains. *See, e.g.*, *Dodrill*, 12 F.3d at 919 ("Disregard of [lay witness testimony] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)." (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).[11] Thus, the contention "[t]hat an ALJ can disregard or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence[] and the rule [that] the ALJ must provide some rationale in order for the Court to meaningfully determine whether the ALJ's conclusions are free of legal

---

[10] The court in *Joseph L.S.* cited the regulatory provisions applicable to Title XVI claims—the same regulatory provisions applicable to Title II claims are in 20 C.F.R. §§ 404.1513, 404.1529.

[11] The requirement that the Commissioner consider nonmedical evidence in adjudicating Title II claims is now in 20 C.F.R. § 404.1513(a)(4).

error and supported by substantial evidence." *Gary J.D. v. Comm'r of Soc. Sec.*, 2023 WL 5346621, at *14 (W.D. Wash. Aug. 21, 2023).

### 2. Analysis

The ALJ discounted a lay witness statement from Plaintiff's mother because she "does not have the medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or the frequency and intensity of unusual moods or mannerisms." AR 25. According to the ALJ, "by virtue of her relationship with [Plaintiff]," Plaintiff's mother cannot be considered "a disinterested third party witness whose statements would not tend to be colored by affection for the [Plaintiff] and a natural tendency to agree with the symptoms and limitations the Plaintiff alleges." *Id.*

These reasons are neither germane, nor legally sufficient to reject a lay witness's testimony, nor does the Commissioner defend these reasons.[12] The Commissioner instead provides two arguments. First, that under the new regulations the ALJ need not provide any reason to discount Plaintiff's mother's statement. As discussed above, the Court rejects this contention. Second, that the ALJ found Plaintiff's mother's testimony similar to Plaintiff's own validly rejected testimony. The ALJ, however, did not make such a finding. The Court construes this argument as that if the ALJ erred, such error is harmless because Plaintiff's mother's statement does not provide any materially different limitations than does Plaintiff's testimony, and it thus may be discounted for the same reasons as the ALJ validly discounted Plaintiff's

---

[12] The Commissioner has waived any contention that those reasons by the ALJ are legally sufficient by not defending those reasons. *See, e.g.*, *Jeffrey C. v. Kijakazi*, 2023 WL 4760603, at *3 (D. Or. July 26, 2023) ("The Government's failure to defend Plaintiff's allegations of error, however, is a concession of those alleged errors."); *cf. Megan S. v. Berryhill*, 2019 WL 1919169, at *5 (D. Or. Apr. 30, 2019) (finding that the Commissioner "has waived any argument that the ALJ provided a clear and convincing reason other than Plaintiff's purported improvement" by failing to respond to Plaintiff's arguments other than generally to assert "harmless error").

testimony. *See Molina*, 674 F.3d at 1117. This argument, however, fails because the Court has rejected the reasons provided by the ALJ for discounting Plaintiff's testimony.

## C. Step Five Error

Plaintiff argues that the ALJ's step five finding is erroneous because the dispositive hypothetical question posed to the VE did not account for all of Plaintiff's limitations. This argument is well taken. Because the ALJ failed properly to evaluate Plaintiff's symptom testimony and the lay witness testimony, the RFC and hypothetical posed to the VE may not have incorporated all of Plaintiff's limitations. A hypothetical posed to the VE must be complete and "include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." (quotation marks omitted). Thus, the ALJ erred in relying on the VE testimony that there were significant jobs in the economy that Plaintiff could perform.

## D. Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful error by failing to provide specific, clear, and convincing reasons to reject Plaintiff's symptom testimony and a germane reason to reject the lay witness testimony. After reviewing the record, however, conflicts and ambiguities remain between the improperly rejected testimony and the evidence regarding the severity and limiting effects of Plaintiff's mental health impairments. The Court therefore remands for further proceedings.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 16th day of April, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge